

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00116-CR

_____

ANDRE TREMOND PHILLIPS, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1604855D

_____

Before Kerr, Womack, and Wallach, JJ.
Opinion by Justice Wallach

**OPINION**

The jury convicted Appellant Andre Phillips of driving while intoxicated–felony repetition and assessed punishment at seven years' confinement, and the trial court sentenced him accordingly. *See* Tex. Penal Code Ann. §§ 49.04, 49.09(b). In seven points, Phillips argues that his right to a fair trial was violated by the State's argument that he had failed to take responsibility for his actions (point one), that the trial court reversibly erred by admitting hearsay and conclusory evidence (points two and three), and that he was denied effective assistance of counsel (points four through seven). Because Phillips has not shown reversible error or that his trial counsel was ineffective, we affirm.

**Background**

On the night of July 20, 2019, Phillips's vehicle hit a parked car on a residential street. An ambulance called to the scene took Phillips to the hospital, where his blood was drawn and a police officer conducted field sobriety tests; testing showed his blood alcohol content at the time of the draw was 0.13.

At trial, Lucia Geisler testified that it was her car that had been hit and that Phillips had been the driver. Her car had been parked outside of her brother's house at the time, and she and her family were having a barbecue in the front yard. The family witnessed the accident and then gathered around Phillips's car when it seemed like Phillips was trying to drive away from the scene. Geisler testified that she smelled

alcohol on Phillips's breath and that after the accident, he climbed into the passenger seat.

The State played for the jury a recording of Geisler's 911 call in which she described the driver as a man who was wearing a black shirt and who "only ha[d] one leg"—Phillips previously had a leg removed after an accident. She also said, as she later did at trial, that the driver had moved to the passenger seat. The same exhibit also included a recording of the 911 call made by Phillips's friend, Robert Harrison; Harrison requested an ambulance for Phillips and said that Phillips had been moved to the passenger side because the steering wheel had been "jammed on him."

Fort Worth Police Officer Christopher Martin testified about responding to the accident, about interviewing Phillips at the hospital to which he had been transported after the accident, and about conducting field sobriety testing on Phillips. The State played footage from Martin's bodycam recording of that interview; in the video, Phillips has on a black shirt.

To show that Phillips had two prior DWI convictions—from 2008 and 2016— the State relied on testimony of Tarrant County Sheriff's Deputy Homero Carnero, who testified without objection that the fingerprints associated with the prior judgments matched fingerprints taken from Phillips on the day of trial and when he had been booked into jail in 1991. However, when the State moved to admit records and the fingerprints associated with the prior judgments, Phillips objected that

3

Carnero had not shown the jury the points of comparison on the fingerprints. The trial court overruled the objection.

Phillips testified in his own defense and stated that Harrison was the driver. Harrison also testified for the defense and said that he had been driving Phillips's car and that Phillips was the passenger. He claimed to have hit the parked car when he swerved to avoid another car that was backing out of a driveway.

The State then played for the jury police bodycam footage showing Harrison responding "Yes" when a police officer asked him if he had been "riding passenger" and if Phillips had been driving the whole time. The State also produced two affidavits that Harrison had executed for the defense. In the first, Harrison said that Phillips "was not under the influence of alcohol" at the time of the accident and said nothing about Harrison driving the car. In the second, executed a month later, Harrison claimed that he had been driving.

In his closing argument, the prosecutor argued that Phillips had not taken responsibility for his actions. The trial court sustained Phillips's first objection to the argument and instructed the jury to disregard the prosecutor's initial comments, but the trial court overruled Phillips's subsequent objections to other comments by the prosecutor about Phillips's taking responsibility. The jury found Phillips guilty, and Phillips now appeals.

## Discussion

## I.  Jury Argument

In his first point, Phillips argues that the State violated his right to a fair trial by repeatedly arguing to the jury that it should hold against him his "failure to take responsibility" by insisting on a jury trial. We disagree.

A felony defendant has a constitutional right to a jury trial. U.S. Const. amend. VI; Tex. Const. art. 1, § 10; *Duncan v. Louisiana*, 391 U.S. 145, 157–58, 88 S. Ct. 1444, 1452 (1968). Thus, a prosecutor cannot, explicitly or in effect, ask the jury to penalize a defendant for exercising that right. *Carlock v. State*, 8 S.W.3d 717, 724 (Tex. App.—Waco 1999, pet. ref'd); *see also Taylor v. State*, 987 S.W.2d 597, 599–600 (Tex. App.—Texarkana 1999, pet. ref'd). Indeed, a prosecutor's argument is permissible only if it falls within one of four areas: "(1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Wages v. State*, 703 S.W.2d 736, 741 (Tex. App.—Houston [14th Dist.] 1985) (citing *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim. App. 1980), and *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)), *pet. dism'd*, 770 S.W.2d 779 (Tex. Crim. App. 1987); *see also Polk v. State*, No. 02-16-00051-CR, 2016 WL 6519120, at *2 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (mem. op., not designated for publication).

Here, the prosecutor argued that Phillips had failed to take responsibility for his crime, and the trial court initially sustained Phillips's objection:

5

[Prosecutor:] Every single defendant who is charged with a crime, has a Constitutional right to have a jury trial. It doesn't matter how much evidence is against them, how guilty they are, how straightforward the case is, or how easy it would be to find them guilty, they still have a constitutional right to ask for a trial.

So there's no catch. You're not missing anything. This is really the case today. We're only here because this defendant has a Constitutional right to have a trial no matter what, and because he's refusing to take responsibility for the offense. And at the end of the day—

[Defense counsel]: Excuse me, Your Honor. I'm going to object to improper argument. The defendant in any case is not required to plead guilty, and this attempts to change the burden of proof to the defense.

THE COURT: All right. I'm going to sustain that particular objection.

The jury will disregard.

[Prosecutor]: Which -- which particular point was I --

THE COURT: I think it was about him refusing to take responsibility. He's got a right to have a jury trial.

[Prosecutor]: Right. And that --

THE COURT: I've sustained the objection.

[Prosecutor]: Okay.

[Defense counsel]: And you've instructed the jury to disregard that; is that correct?

THE COURT: The jury will disregard.

[Defense counsel]: Thank you, Judge.

[Prosecutor]: May I rephrase?

THE COURT: You may conduct your argument.

After that, the prosecutor continued his argument by saying that Phillips was not *required* to take responsibility but that he had indeed not done so, and this time the trial court overruled Phillips's objections:

> [Prosecutor]: Okay. He doesn't have to take responsibility. But, clearly, he's not taking responsibility. That's why we're here.
>
> [Defense counsel]: Once again, Your Honor, this attempts to change the burden of proof, and we object to it.[1]
>
> THE COURT: I'll overrule that particular objection.
>
> . . . .
>
> [Prosecutor:] At the end of the day, like I said, when a defendant doesn't want to take responsibility for an offense, it's up to the jury --
>
> [Defense counsel]: Objection, Your Honor, you've already ruled that that's an improper thing to say during closing argument, and you've instructed the jury to disregard it. I'm going to object.
>
> THE COURT: Well, the Court has instructed the jury. And I'm going to overrule the particular objection at this time and allow the argument.
>
> [Prosecutor]: When a defendant doesn't want to take responsibility for an offense --
>
> [Defense counsel]: Your Honor, you've already ruled about this business about taking responsibility. Every defendant has a right to a jury trial. This attempts to change the burden of proof, and we object to it.
>
> THE COURT: The jury has been instructed. I overrule the objection.

---

[1]For purposes of this appeal, we assume that Phillips's objection that the State was attempting to shift the burden of proof was broad enough to include the complaint he makes on appeal. *See* Tex. R. App. P. 33.1.

[Prosecutor]: I'll say it again. When a defendant doesn't want to take responsibility for an offense, it's up to the jury to make him do it.

[Defense counsel]: And, Your Honor, as the Court knows, I'm required to object every time that the defense believes that there's an improper argument, or I waive my objection. So I'm going to object again on the same basis that I have. This is an attempt to change the burden of proof on the defendant.

THE COURT: The burden of proof is always on the state. It never shifts to the defendant. The Court has instructed the jury. I'll overrule the particular objection.

Regarding the argument to which the trial court sustained Phillips's argument, he does not argue that the trial court's instruction was insufficient to cure any harm arising from the argument, and we conclude that it was sufficient. *See Wages*, 703 S.W.2d at 741 (holding that prosecutor's comments were not so inflammatory that their prejudicial effects were not removed by the judge's instruction to disregard); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (noting that impermissible argument is reversible only if, in light of entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the proceeding and that an instruction to disregard the remarks will usually cure the error). Thus, if that argument rose to the level of asking the jury to punish Phillips for exercising his constitutional right, the trial court's instruction cured any harm from it.

Regarding the rest of the prosecutor's argument, Phillips argues that it "went well past responding to the evidence, or merely pointing out to the jury why it should

believe the evidence that contradicted [Phillips's] testimony." We disagree; "[w]hile the prosecutor's statements may straddle the line of permissible argument, they do not rise to the level of an improper comment in these circumstances." *Polk*, 2016 WL 6519120, at *3. The State was entitled to summarize and respond to Phillips's defense—a defense that was, in fact, centered on shifting the blame for the events of the night onto someone else. *See id.* (holding State was entitled to respond to defendant's arguments that he had made a false confession); *Head v. State*, No. 03-10-00414-CR, 2013 WL 1831576, at *7, *8 (Tex. App.—Austin Apr. 24, 2013, no pet.) (mem. op., not designated for publication) (holding that trial court could conclude that prosecutor's arguments that "you sure do get credit for accepting responsibility and not making someone go through a jury trial" was a response to defendant's argument that witness for State must have received a deal in exchange for his testimony). As such, the prosecutor's argument was not improper. We overrule Phillips's first point.

## II. Martin's Testimony

In his second point, Phillips argues that the trial court "wrongfully permitted Officer Christopher Martin to identify [Phillips] in court as the driver of the vehicle, based on inadmissible hearsay." Martin is the Fort Worth Police Officer who was dispatched to the scene of Phillips's accident. Most of Martin's testimony was about his interview with Phillips, Phillips's performance on a field sobriety test, and the

blood draw performed at the hospital. Phillips's complaint focuses on the identification Martin made of him toward the beginning of his testimony.

Martin testified that after going to the scene, he went to the hospital because Phillips had been transported there by ambulance. Martin then testified that he had been informed of the driver's identity, and he identified Phillips as that person by pointing to him and describing his attire. Phillips's trial counsel then objected "to the terminology 'the driver,'" arguing that Martin's testimony about "what some other person may have told [Martin]" was hearsay; "[s]o we don't object to him identifying this person in court as a person he knows, but not as the driver." The trial court then stated, "The jury will be able to evaluate the testimony they've heard. And I think it's clear that he did not observe him as a driver, but he was identified as a driver. So with that understanding, the [S]tate m[a]y proceed." Phillips argues that Martin's testimony identifying him as the driver "was an abuse of discretion that merits reversal, given the importance of the identification issue."

We will assume for purposes of this opinion that the trial court abused its discretion in its disposition of Phillips's objection. The question we must therefore consider is whether the trial court's error is reversible. We will not reverse based on non-constitutional error unless the error affected a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). "An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict." *Null v. State*, 640 S.W.3d 370, 380 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing

10

*King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). "If the error had no influence or only a slight effect on the verdict, then the error is harmless." *Id.* (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)); *see also Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). "In making a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence." *Coble*, 330 S.W.3d at 280.

We conclude that the complained-of statements would have had only a slight effect, if any, on the jury's deliberations. Martin's testimony was that some person or persons had told him that Phillips was the driver. The trial judge then essentially instructed the jury that Martin's testimony was not evidence that he had witnessed Phillips driving and was evidence only that someone had told Martin that Phillips was the driver. However, the jury had already heard evidence that someone had told law enforcement that Phillips was the driver; during Geisler's testimony, the prosecutor played her 911 call in which she identified the driver as a man who was missing a leg and wearing a black shirt. *See Redmond v. State*, 629 S.W.3d 534, 549 (Tex. App.—Fort Worth 2021, pet. ref'd) (holding that complained-of testimony had been admitted elsewhere and was thus harmless). In her trial testimony, Geisler identified Phillips as the driver,[2] and when Phillips presented his and Harrison's testimony that Harrison was the driver, the prosecutor impeached that testimony with a police officer's

---

[2]Thus, Geisler's statements to law enforcement identifying Phillips as the driver are not hearsay. *See* Tex. R. Evid. 801(e)(1)(C).

11

bodycam video (discussed more below) in which Harrison told officers that Phillips had been driving.

Further, although Phillips argues that Martin's hearsay statement was improper bolstering of Geisler's testimony, the record does not support that argument.[3] "Bolstering" is evidence that does not substantively contribute to making a consequential fact more or less probable and has "the *sole* purpose" of convincing the factfinder "that a particular witness or source of evidence is worthy of credit." *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993). Here, there is no indication that the State used Martin's testimony to convince the jury that Geisler's testimony or her statements in the 911 call recording were credible. Rather, the prosecutor used the testimony as a starting point to explain why Martin went to the hospital and to identify Phillips as the person he interviewed.[4] Also, the State did not place much emphasis on that part of Martin's testimony. The prosecutor mentioned that part of Martin's testimony once more, when cross-examining Phillips; the prosecutor included it when listing testimony and other evidence contradicting Phillips's

---

[3]Phillips did not mention bolstering in his trial objection, but we will assume for purposes of this opinion that the trial court understood Phillips's objection to include bolstering. *See, e.g.*, *Rivas v. State*, 275 S.W.3d 880, 886–87 (Tex. Crim. App. 2009) (noting that "bolstering" has ties to Rules of Evidence 608, 612, and 613 and "reiterat[es] the principles of hearsay").

[4]If the State used Martin's testimony only to establish why he had gone to the hospital to interview Phillips and not to prove that Phillips was the driver, that testimony would not be hearsay. *See* Tex. R. Evid. 801(d). We assume for purposes of this appeal, however, that it was hearsay.

12

testimony that he was not the driver, but he did so as a predicate to asking Phillips "what reason does anybody have to lie against [him] and say that [he] w[as] driving, a person with one leg in a black shirt."[5] In context, the prosecutor was using Martin's hearsay statement as part of its impeachment of Phillips's testimony but not as substantive evidence that Phillips was the driver.

Based on the record, Martin's complained-of testimony had no or only a slight effect on the verdict and was therefore harmless. *See Coble*, 330 S.W.3d at 280, 287. We overrule Phillips's second point.

## III. Fingerprint Evidence

In his third point, Phillips argues that the trial court erred by admitting evidence of Phillips's prior convictions because the State's fingerprint expert failed to identify the specific fingerprint characteristics he observed that indicated a match and instead "offered only the conclusory testimony that fingerprints matched with 10–12 points of comparison on some of the prints."

The State called Deputy Carnero to prove up Phillips's prior DWI convictions. *See Gibson v. State*, 995 S.W.2d 693, 696 (Tex. Crim. App. 1999) (noting that prior intoxication-related offenses are elements of felony driving while intoxicated offense). Carnero testified about his qualification to do fingerprint comparisons and about how one makes a comparison. He then explained that he had taken Phillips's fingerprints

---

[5]The "person with one leg in a black shirt" referenced Geisler's statements to law enforcement.

13

that morning and that the card on which he had taken the prints was State's Exhibit 15. State's Exhibit 12 was a fingerprint card showing fingerprints that had been taken from Phillips at the Tarrant County Jail in 1991. Both cards also contained the unique, permanent county ID (CID) number that had been assigned to Phillips. The trial court admitted both exhibits without objection. Carnero then testified that the two sets of fingerprints matched.

The State showed Carnero State's Exhibits 10 and 11, which were the judgments and associated documents regarding Phillips's prior convictions. That documentation included fingerprints and Phillips's CID number. Carnero testified that the fingerprints and CID number on those exhibits matched the fingerprints and CID number in Exhibits 12 and 15. When the State moved to admit Exhibits 10 and 11, Phillips took Carnero on voir dire and then objected to the exhibits' admission. The trial court overruled the objection.

Phillips argues that the trial court erred by admitting the evidence of the prior convictions because Carnero "could not identify the characteristics of the fingerprints [that] led to his conclusion that they belonged" to Phillips. However, that argument is a mischaracterization of Carnero's testimony. It is not that Carnero *could not* identify the specific characteristics that he observed in forming his opinion but that he *did not* do so—because he was never asked to do so.

Under Texas Rule of Evidence 705, an expert may state an opinion without first testifying to the underlying facts or data supporting the opinion. Tex. R. Evid.

14

705(a). However, on cross-examination, the expert may be required to disclose that underlying information. *Id.* If requested, the opposing party must be given the opportunity to ask the expert about the underlying information *before* the expert states an opinion. Tex. R. Evid. 705(b). "This examination must take place outside the jury's hearing."[6] *Id.* Further, if the opposing party's questioning in cross-examination reveals that the underlying information does not provide a sufficient basis for the expert's opinion, the opinion is inadmissible and, thus, if the opinion has already been disclosed, it may be stricken. *See* Tex. R. Evid. 705(c); *Acevedo v. State*, 255 S.W.3d 162, 168 (Tex. App.—San Antonio 2008, pet. ref'd). Here, however, Carnero was never asked by Phillips to disclose the underlying information on which he based his opinion that State's Exhibits 10 and 11 were Phillips's prior convictions.

The prosecutor asked Carnero, "When you looked at those fingerprints on these two [prior] judgments and sentences, did they match with the fingerprints on [Exhibits 12 and 15] that are already in evidence?," Carnero answered—without objection—"Yeah, they do."

> Q. So that would mean that those judgment sentences for convictions belong to this defendant?
>
> A. Yes.
>
> Q. Did the CID numbers match as well?

---

[6]When Phillips asked to take the witness on voir dire, the trial court did not excuse the jury from the courtroom, and Phillips did not request the jury's exclusion. Thus, the jury heard all of the witness's voir dire testimony.

15

A. Yes, they do.

Q. Okay.

It was at that point that the prosecutor moved to have State's Exhibits 10 and 11 admitted. Only then did Phillips ask to take the witness on voir dire.

In Phillips's voir dire questioning, he asked Carnero about the number of points of comparisons he had found between the different fingerprints.

Q. What is your personal number of points of comparison to make such an analysis and be comfortable with it?

A. There is no national standard, but in error resolution, we use a minimum of 10.

Q. Ten?

A. Yes, sir.

Q. Okay. And do you -- could you tell the jury real quick what a point of comparison is?

A. It's one of those -- one of the characteristics I mentioned earlier where you start counting. That's what you refer to as a point of comparison.

Q. And how many points of comparison did you find on State's Exhibit 10 that you could identify with either State's Exhibit 15 or 12?

A. I did reach a minimum of 10, and there's one I did go to 12. I'm not sure which exhibit it was.

Q. Yeah, if you could make that clear, that would be great.

A. Okay. On Exhibit 10, yes, I did go to 10 points. Exhibit 11, there was one I did go to twelve points. There's two on Exhibit 11, one with 10 points and the other one 12 points.

16

Phillips then asked about the number of comparisons on which Carnero had relied in forming his opinion. When Carnero seemed about to testify about how he established the points, Phillips interrupted him and clarified his question:

> Q. How did you arrive at the number of 10?
>
> A. I started at one point -- it's like mapping --
>
> Q. Oh, I'm sorry. I didn't ask a good question. Let me start over. You have a personal standard to testify to jurors that you must have 10 points of comparison. How did you decide on 10 rather than, say, 8 or 12 or some other number?
>
> A. That's -- that's what -- how I was trained and that's how we've been sticking to.
>
> Q. Okay. So are you aware that the FBI and some other federal law enforcement agencies would be unhappy with just 10?
>
> A. I wouldn't know.
>
> Q. Okay. How can you have confidence that 10 is enough so that the jury will know that this really is a match?
>
> A. Well, it depends on the examiner itself, the clarity and the -- just examiner itself. I mean, it just . . .
>
> Q. Well, you haven't shown the jury here which 10 points there are; correct?
>
> A. Correct.

Phillips then argued that Exhibits 10 and 11 (but not Carnero's opinion derived from them)[7] were inadmissible:

---

[7]However, for purposes of this opinion, we will construe his objection to the admission of State's Exhibits 10 and 11 to include an objection to the already-admitted opinion testimony based on those exhibits.

[Phillips's attorney]: Well, on that basis, Your Honor, we're going to object to both State's Exhibits 10 and 11.

THE COURT: And what's the objection?

[Phillips's attorney]: This witness has not demonstrated to the jury any points of comparison for which they could -- they or you or I -- could know that he, in fact, is able to say there are 10 points of comparison, his personal standard.

THE COURT: Are you suggesting he has to show the jury the exact 10 that match?

[Phillips's attorney]: Yes, sir.

THE COURT: Okay. Any response for the record from the state?

[Prosecutor]: Just that, Your Honor, we qualified -- we believe we qualified him as an expert in this area. And that he's here to testify about his expert testimony, not make each and every juror an expert in the field of fingerprints. That would be my response.

[Phillips's attorney]: He hasn't even showed the Court what those 10 points are, Your Honor.

THE COURT: All right. I'm going to overrule the objection. And the jury will be allowed to consider the testimony.

[Prosecutor]: Your Honor, is the evidence admitted at this point?

THE COURT: Any other objections, [Phillips's attorney]?

[Phillips's attorney]: No, that's it.

THE COURT: Very well. No other objections, then State's Exhibits 10 and 11 are both admitted.

In other words, Phillips's objection was that the trial court had to exclude Exhibits 10 and 11 unless Carnero showed the jury—without being asked—the specific points of comparison that he had found. That is not, however, what Rule 705 requires. *See*

18

Tex. R. Evid. 705(a); *cf. Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389–90 (Tex. 2008) (noting that experts are not required to introduce foundational data at trial unless the court or opposing party insists). We therefore reject this argument.

Phillips further argues that his objection "should be construed as an objection to the scientific reliability of [Carnero's] methods and conclusions." Phillips does not specify which *Kelly* criteria he believes his objection could be construed to include. *See* Tex. R. App. P. 38.1(i); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (stating that to be reliable, scientific evidence must satisfy three criteria: "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question"); *Moore v. State*, No. 14-18-00975-CR, 2019 WL 5704348, at *2 (Tex. App.—Houston [14th Dist.] Nov. 5, 2019, no pet.) (mem. op., not designated for publication) (noting that in addition to right to voir dire expert under Rule 705 to determine foundation of expert's opinion, a party also has right to challenge expert on the *Kelly* criteria). The State had no need to satisfy the first two because the Court of Criminal Appeals has held that fingerprint-comparison analysis satisfies those criteria. *See Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005); *see also Ross v. State*, Nos. 02-14-00210-CR, 02-14-00211-CR, 2015 WL 3637930, at *5 (Tex. App.—Fort Worth June 11, 2015, pet. ref'd) (mem. op., not designated for publication). Thus, the

only possible objection Phillips could have made under *Kelly* was that the State had not shown that Carnero had properly applied the technique.

However, Phillips did not object that Carnero had not properly applied the technique by relying on only ten points of comparison for one set of fingerprints, although he asked some questions on which such an argument perhaps could have been based. Further, Carnero testified about what he looked for in making comparisons, and Phillips at no point raised any issue about or elicited any testimony suggesting that Carnero had not accurately applied the technique in deciding that points of comparison existed. *See Forward v. State*, 406 S.W.3d 601, 605–06 (Tex. App.—Eastland 2013, no pet.) (stating that there was no evidence that the fingerprint expert performed any portion of his comparison incorrectly). In other words, Carnero testified about his application of the technique, and Phillips's only objection was that Carnero had not shown the specific points of comparison, i.e., that Carnero had not disclosed the underlying information supporting his opinion that the fingerprints matched. If Phillips had any other objection to State's Exhibits 10 and 11 or to the reliability of Carnero's testimony, he forfeited that complaint. *See* Tex. R. App. P. 33.1; *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) (stating complaint about evidence admissibility is forfeited absent a timely and specific objection). We overrule Phillips's third point.

## IV. Ineffective Assistance of Counsel Points

In his fourth through seventh points, Phillips complains that he was denied effective assistance of counsel by his trial attorney. However, the record does not support his points.

To prevail on a claim of ineffective assistance of counsel, Phillips must show that: (1) his trial counsel's performance was deficient; and (2) that deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067 (1984). "In considering ineffective-assistance-of-counsel claims, we employ a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that the challenged conduct could be considered sound trial strategy." *Ex parte Garza*, 620 S.W.3d 801, 827 (Tex. Crim. App. 2021). In the absence of evidence of trial counsel's reasons for the challenged conduct, we find ineffectiveness only if there is no reasonable trial strategy that could justify the attorney's actions. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Thus, we look at the allegations of ineffectiveness to see if the conduct was "so outrageous that no competent attorney would have engaged in it." *Prine v. State*, 537 S.W.3d 113, 116–17 (Tex. Crim. App. 2017) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## A. Exhibit 16's Bodycam Footage

Phillips raises two ineffectiveness points involving State's Exhibit 16, the disk containing bodycam video of Fort Worth Police Officer Wayne Estes. The disk includes a video showing Phillips's friend Robert Harrison talking to officers who responded to the 911 call; it was in this video that Harrison acknowledged that Phillips was the driver. In addition to the video of Harrison, Exhibit 16 also includes a video of Estes conducting an inventory of Phillips's car. In Phillips's fourth point, he contends that his trial counsel was ineffective by failing to make a hearsay objection to the video of Harrison's statements to officers. The State introduced the entire disk during Estes's testimony but did not publish the challenged footage until after Harrison testified that he was the driver. If Phillips's attorney had successfully objected to the video as hearsay at the time of its admission, then the video would have become admissible as soon as Harrison testified. *See* Tex. R. Evid. 613; *Willover v. State*, 70 S.W.3d 841, 846 n.8 (Tex. Crim. App. 2002) (noting that evidence of witness's prior inconsistent statements is admissible for impeachment purposes); *see also Prine*, 537 S.W.3d at 117–18 (stating that claim of ineffective assistance cannot be supported by failure to object unless trial court would have erred by overruling objection). Thus, the only way to prevent the video from becoming admissible would have been to not call Harrison as a witness. Considering the defense's reliance on Harrison's testimony as part of Phillips's trial strategy to establish Harrison as the driver, on this record, we cannot conclude that the attorney's failure to object was not

a calculated risk. *See Alexander v. State*, 282 S.W.3d 701, 706 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("We cannot find deficiency from a calculated risk by appellant's trial counsel that simply did not work."). We therefore overrule Phillips's fourth point.

In Phillips's sixth point, he argues that he was denied effective assistance by his trial attorney's failure to object to the video's admission as prior inconsistent statements because Estes did not authenticate the part of the video containing those statements. *See* Tex. R. Evid. 901. Although the State published only the inventory video during Estes's testimony, Estes did not limit his authentication testimony to that footage. Rather, he testified about the disk in general, describing it as a disk from the bodycam, as containing footage that was captured on July 20, 2019, and as "accurately depict[ing] the events as [he] witnessed them on that night."[8] The trial court had a basis on which it could properly overrule an authentication objection, *see* Tex. R. Evid. 901(a), (b)(1), and on this record, Phillips's trial attorney's failure to object cannot support the ineffective assistance claim.[9] *See Prine*, 537 S.W.3d at 117–18. We overrule his sixth point.

---

[8]Harrison also acknowledged in his testimony that the person in the video "seems to be" him. During the inventory video, Estes is seen talking to a man in a white shirt, and at trial, Estes identified that person as the vehicle's passenger.

[9]Further, even if Estes had not authenticated the entire disk and Phillips's trial counsel had objected on that basis, there is nothing to suggest that the prosecutor could not have then elicited testimony from Estes to authenticate the rest. Thus, because it would have been an easy matter for State to respond to the objection and

## B. Harrison's Affidavits

In his fifth point, Phillips asserts that his trial counsel was ineffective by failing to object to the admission of Harrison's affidavits as evidence of Harrison's prior inconsistent statements because the State did not provide a proper foundation. The record does not support an ineffective assistance claim on this basis.

Harrison's first affidavit was inconsistent with his trial testimony by inference—it did not expressly say that Phillips had been driving, but it also did not say that Harrison was the driver, and it said that Phillips "was not under the influence of alcohol" and "was not D.U.I., or D.W.I." This affidavit was not admissible as an inconsistent statement because Harrison did not unequivocally deny making it. *See* Tex. R. Evid. 613(a)(4). However, by the time the prosecutor moved to admit it, its impeaching elements had already been put before the jury. Harrison had already testified that in the affidavit he (1) stated that Phillips had not been under the influence of alcohol and (2) did not mention driving. *Cf. Johnson v. State*, 583 S.W.2d 399, 404 (Tex. Crim. App. [Panel Op.] 1979) (holding admission of prior inconsistent written statement was harmless when the statement's contents were already before the jury); *Kane v. State*, No. 04-02-00275-CR, 2003 WL 22902978, at *4 (Tex. App.—San Antonio Dec. 10, 2003, pet. ref'd) (mem. op., not designated for publication) (same).

---

remedy any deficiency, it is hard to fathom how the lack of objection prejudiced Phillips's defense. *See Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067.

In the second affidavit, Harrison stated that an officer had said that Phillips asked him to lie about being the driver, "which is not true because [Phillips] was unconscious in the passenger seat." This affidavit was consistent with Harrison's trial testimony and thus supported Phillips's defense, which is possibly why, after the trial court admitted the affidavits, Phillips's attorney had Harrison read them both to the jury and then questioned Harrison about their contents. On this record, we cannot conclude that Phillips's trial attorney's failure to object to the affidavits' admission was so outrageous that no competent attorney would have engaged in it. *See Prine*, 537 S.W.3d at 116–17. We overrule Phillips's fifth point.

## C. Failure to Request Limiting Instruction

In Phillips's seventh and final point, he argues that he was denied effective assistance by his attorney's failure to ask the trial court to instruct the jury that Harrison's affidavits and Estes's bodycam video were to be considered as impeachment evidence only and not as evidence of Phillips's guilt. *See* Tex. R. Evid. 105. The decision to not request a limiting instruction concerning certain unfavorable evidence may be a trial strategy to minimize the jury's recollection of the evidence. *See Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007). "[T]o hold trial counsel's actions (or inaction) ineffective in the instant case would call for speculation[,] and such speculation is beyond the purview of this [c]ourt." *Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001). We overrule Phillips's seventh point.

25

**Conclusion**

Having overruled Phillips's seven points, we affirm the trial court's judgment.


/s/ Mike Wallach
Mike Wallach
Justice

Publish

Delivered:  July 28, 2022